CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
February 12, 2025
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### *Roanoke Division*

| | |
|---|---|
| TRAVIS LIGHT, individually and on behalf of all others similarly situated, | 7:25CV00102 |
|     Plaintiff, | **No.:** |
|        v. | |
| ENGLANDER TRANSPORTATION, INC., and FLEETMASTER EXPRESS, INC.,     Defendants. | **CLASS AND COLLECTIVE ACTION COMPLAINT** |

## COMPLAINT

1.      This is a lawsuit brought by Plaintiff Travis Light ("Plaintiff") on behalf of current and former delivery drivers who work for Englander Transportation, Inc. ("Englander") and Fleetmaster Express, Inc. ("Fleetmaster') ("collectively, "Defendants"), delivery companies headquartered in Virginia.

2.      Englander Transportation "began as a refrigerated transportation operation has grown to now include a dry van regional division." According to its website, Englander "ship[s] from either Virginia or Tennessee and haul to the West Coast" and "focus[es] on speed, efficiency, and accuracy."[1]

3.      Fleetmaster uses "[d]ry vans . . . to deliver all forms of freight not requiring climate control but needing to be protected from the elements." According to its website, Fleetmaster has 300 trucks and "the best group of drivers of any trucking company in the United States."[2]

4.      As set out below, although Defendants classify their delivery drivers, including

---

[1] www.englandertransportation.com (last visited January 26, 2025).
[2] www.fleetmasterexpress.com (last visited January 26, 2025).

Plaintiffs, as independent contractors, Defendants retain control and actually control the manner and means of every material aspect of their drivers' work obligations. Accordingly, notwithstanding their classification, Defendants' drivers are employees under Virginia and federal law.

5.      Plaintiff Light brings this case as a class action under Fed. R. Civ. P. 23 on behalf of all current and former delivery drivers who have contracted with Englander and/or Fleetmaster to provide delivery services between February 2022 and the present, and who were not treated by Defendants as employees. Plaintiff alleges that Defendants violated the Virginia Misclassification Statute, VA Code § 40.1-28.7:7 by failing to pay Plaintiff and other delivery drivers all wages due and requiring Plaintiff and other delivery drivers to incur expenses in connection with their work for Defendants. Plaintiff also alleges that Defendants violated the Virginia Wage Payment Act, VA Code § 40.1-29 by taking deductions from his and other delivery drivers' pay without their written and signed authorization. Plaintiff further alleges that Defendants violated the Virginia Minimum Wage Act, VA Code § 40.1-28.10, by failing to pay him and other delivery drivers minimum wage for all hours worked.

6.      Plaintiff also brings this case as a collective action under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on behalf of all current and former delivery drivers who have provided delivery services for Englander and/or Fleetmaster between February 2022 and the present. Plaintiff alleges that it was Defendants' policy and practice to take deductions from delivery drivers' pay which, in many weeks, caused the delivery drivers' compensation to fall below minimum wage. Accordingly, Plaintiff and other delivery drivers were not paid minimum wage in some weeks worked, in violation of the Fair Labor Standards Act, 29 U.S.C. § 206.

7.      Plaintiff also seeks to represent, under Fed. R. Civ. P. 23, a class of similarly

situated drivers who worked as delivery drivers for Defendants and who entered into a lease agreement with Englander and/or Fleetmaster at any time between February 2021 and the present. Plaintiff alleges that Defendants' unlawful practices described in this complaint are in violation of 49 U.S.C. § 14102 and its regulations, referred to hereinafter as the Truth-in-Leasing regulations or TIL Regulations.

## Jurisdiction and Venue

8.      This Court has personal jurisdiction over Defendant Englander because it has its corporate headquarters in Rustburg, Virginia, in this judicial district.

9.      The Court has personal jurisdiction over Defendant Fleetmaster because it has its corporate headquarters in Roanoke, Virginia, in this judicial district.

10.     This Court has federal question jurisdiction over Plaintiff's FLSA claims under 29 U.S.C. §216(b) and Plaintiff's Truth-in- Leasing claims under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's claims under Virginia law pursuant to 28 U.S.C. § 1367 because these claims are so related to the claims over which this Court possesses original jurisdiction that it forms part of the same case or controversy under Article III of the Constitution.

11.     The Court also has subject matter jurisdiction under 28 U.S.C. § 1331 pursuant to the Class Action Fairness Act ("CAFA"). See 28 U.S.C. § 1332(d), since Plaintiffs' class claims in total exceeded $5 million.

12.     Venue is appropriate in this district because a substantial part of the events giving rise to Plaintiff's Complaint took place in Roanoke, Virginia, in this judicial district.

## Parties

13.     Plaintiff Travis Light is a citizen of Kingsport, Tennessee. Light worked as a delivery driver for Englander and Fleetmaster between June 2023 and January 2025.

14.     Defendant Englander is a Virginia corporation whose headquarters are in Rustburg, Virginia.

15.     Defendant Fleetmaster is a Virginia corporation whose headquarters are in Roanoke, Virginia. Fleetmaster has an office and yard in Roanoke, Virginia.

16.     Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-7.

17.     Defendants' annual gross volume of sales made or business done exceeds $500,000.

**Defendants' Status as Joint Employers**

18.     Defendants Englander and Fleetmaster acted as Plaintiff's joint employers.

19.     Fleetmaster and Englander have the same owner and Chief Operating Officer.[3] Englander describes Fleetmaster as its "sister company."[4]

20.     Upon beginning work for Defendants, Plaintiff reported to Fleetmaster's yard in Roanoke Virginia, where he picked up his truck and trailer, and underwent a road test.

21.     Plaintiff was required to sign an independent contractor agreement with Fleetmaster.

22.     Plaintiff received weekly pay statements, showing his compensation and the deductions made from his pay, from Fleetmaster.

23.     Plaintiff brought his truck and trailer to Fleetmaster's yard in Roanoke, Virginia for maintenance and repairs.

---

[3] https://www.fleetowner.com/refrigerated-transporter/reefer-operations/article/21231435/englander-acquires-three-trucking-firms (last visited February 10, 2025).

[4] https://www.facebook.com/EnglanderTransportation/posts/our-sister-company-fleetmaster-express-inc-is-on-its-way-to-be-more-sustainable-/4858425517599062/ (last visited February 10, 2025).

24.     Plaintiff received his Form 1099 from Englander.

25.     During his time working for Defendants, Plaintiff communicated with a dispatcher employed by Englander Transportation.

26.     At all times while working for Defendants, Plaintiff drove a truck with an Englander logo on it and a trailer with a Fleetmaster logo on it.

### Facts Relevant to Plaintiff's Misclassification Claims

27.     Plaintiff performed delivery services for Defendants personally on a full-time basis out of a Fleetmaster's warehouse in Roanoke Virginia, making deliveries in Virginia and other states.

28.     Plaintiff and other delivery drivers were classified by Defendants as independent contractors. Notwithstanding this classification, Plaintiff and other drivers exercised virtually no independent control over their own work life and therefore they are employees of Defendants under Virginia and federal law.

29.     Plaintiff and other drivers work full-time for Defendants, working up to 70 hours a week.

30.     Plaintiff and other delivery drivers are required to display Defendants' logos on their trucks and trailers.

31.     Plaintiff and other drivers are not involved in the negotiation and/or arrangements between Defendants and their customers over pick up, delivery times, and other requirements.

32.     As a practical matter, Plaintiff and other delivery drivers are not able to deliver for other companies while working for Defendants, as they operate trucks and trailers that are registered under Defendants' Motor Carrier authority, and thus can only transport merchandise for Defendants.

33.     The drivers receive regular instructions from Englander's dispatchers and are required to keep cell phones and a GPS with them at all times so that Englander can contact them on the road to make changes to their pickup and delivery schedule.

34.     There is no independent entrepreneurial opportunity for the drivers and no business to grow. Plaintiff and other drivers do not negotiate the rates for their loads; they are assigned loads by Defendants, and cannot turn down the loads which they have been assigned.

35.     Defendants maintain a set of mandatory requirements to which all of their drivers must adhere. If the drivers fail to follow the multitude of rules, regulations and policies, Defendants threaten to discipline or actually discipline the drivers, including termination at will.

36.     The drivers exercise no independent business judgment in the performance of their jobs, nor do they have an opportunity to do so. Defendants retain for themselves the right to control the drivers' work, and Defendants negotiate the prices paid by its customers for deliveries.

37.     Defendants required Plaintiff Light to lease a truck from Englander and took deductions out of his pay for use of that truck.

38.     Defendants also took deductions from Plaintiff's and other delivery drivers' pay for fuel and repairs.

39.     Defendants also took deductions from Plaintiff's and other drivers' pay for items including insurance coverage, fines and penalties, and an escrow fund. These deductions often total hundreds of dollars a week. Plaintiff received weekly pay statements from Fleetmaster reflecting these various deductions taken from his pay.

40.     As a result of these deductions, there are weeks in which Plaintiff's compensation fell below minimum wage, in violation of the FLSA and Virginia law.

41.     For example, Plaintiff Light did not receive any compensation in his final week of

work for Defendants, despite working approximately 70 hours that week.

42.     In addition, in at least one week in July 2022, Plaintiff light received a check for $9.23, despite working approximately 70 hours that week.

### Facts Relevant to Plaintiff's Truth-in-Leasing Claims

43.     Defendants are trucking companies with authority granted by the DOT to transport property. They employ drivers to transport their customers' freight in interstate commerce.

44.     Defendants are motor carriers and authorized carriers under 49 U.S.C. §§ 13901 and 13902, *et seq*. and the TIL regulations.

45.     Defendants offer to lease equipment to individuals seeking to perform services as delivery drivers. Those individuals who choose to lease equipment from Defendants are required to sign an Equipment Lease Agreement with Englander. The Equipment Lease Agreement is a standard form agreement that Defendants present to drivers on a take-it-or-leave it basis, without the opportunity to negotiate.

46.     When Plaintiff began work for Defendants, he did not have his own truck. Consequently, in June 2023, he entered into an Equipment Lease Agreement with Englander.

47.     The Equipment Lease Agreement constitutes a "lease" within the meaning of the Truth-in-Leasing regulations, 49 C.F.R. § 376.29(e).

48.     The Equipment Lease Agreement states that the driver must maintain escrow fund, and that the driver must make weekly payments into the escrow fund to maintain the required balance of $10,000.00.

49.     The amounts deducted and retained by Defendants from Plaintiff's and other drivers' compensation pursuant to the Equipment Lease Agreement constitute an "escrow fund" within the meaning of the TIL regulations, 29 C.F.R. § 376.2(l).

50.     The Equipment Lease Agreements do not comply with TIL regulations pertaining to escrow funds because, among other things, it fails to sufficiently identify and describe the specific items to which the escrow fund can be applied.

51.     Additionally, Defendants have failed to adhere to the TIL regulations concerning maintenance and accounting of drivers' escrow funds by failing to pay interest to the drivers on the balance of drivers' escrow funds on at least a quarterly basis.

52.     Under the TIL regulations, Defendants were required to disclose in a written lease all expenses that they would "charge back" to the drivers.

53.     Defendants made numerous deductions from drivers' pay that were not disclosed in the Equipment Lease Agreement. These included, in Mr. Light's case, deductions for "base plate fee","ezpass", "drivewyze" and "fuel transaction fees", among others.

54.     Under the TIL regulations, Defendants were required to disclose in a written lease the amount that they would pay Light and the other putative class members as compensation, and to specify that they would provide Light and the other putative class members with a copy of the rated freight bills upon which their compensation was based, either before or at the time of settlement.

55.     The Equipment Lease Agreement failed to disclose that Defendants would provide a copy of the rated freight bills, and Defendants in fact failed to provide Light and the other putative class members with a copy of the rated freight bills upon which their compensation was based.

56.     Defendants' deductions, chargebacks, withholdings, excess charges, and failure to comply with the TIL regulations have resulted in an improper windfall to Defendants.

57.     Defendants' drivers have suffered harm and sustained damages from Defendants'

actions, including improper deductions from their pay and failing to adhere to the TIL regulations'

requirements for handling escrow accounts.

## Class Allegations

58.     Plaintiff brings Counts I-III of this lawsuit on his own behalf and on behalf of the

following described Class:

> Each person who, at any time between February 2022 and the date on which a
> Class is certified, entered into an agreement to work as a delivery driver for Englander
> and/or Fleetmaster and was classified as an independent contractor.

59.     Plaintiff brings Count V of this lawsuit on his own behalf and on behalf of the

following described Class:

> Each person who, at any time between February 2021 and the date on which a
> Class is certified, entered into an Equipment Lease Agreement with Englander and/or
> Fleetmaster.

60.     Upon information and belief, the number of class members in each class is

in excess of 50. Accordingly, joinder of class members is impracticable. Defendants have

the records necessary to identify all Class members and to calculate their recoveries.

61.     The named Plaintiff is a member of the Class and shares with the Class common

questions of law and fact, including whether Defendants have correctly classified their drivers as

independent contractors; whether Defendants have taken unlawful deductions from their pay;

whether Defendants have failed to pay them all wages and compensation owed; and whether

Defendants have violated the Truth-in-Leasing Regulations.

62.     The claims of the named Plaintiff are typical and representative of the claims of the

Class he seeks to represent. The named Plaintiff has suffered the same type of financial losses as

other Class members.

63.     Plaintiff will fairly and adequately represent the Class. There are no conflicts that compromise his ability to represent the Class and he has retained experienced lawyers who are well versed in independent contractor/employee issues and Class action litigation.

64.     Common questions predominate in this dispute and a Class action is the superior way to resolve this dispute.

## Collective Allegations

65.     Plaintiff brings Count IV of this lawsuit as a collective action on behalf of all individuals who worked as delivery drivers for Englander and/or Fleetmaster in the United States during the last three years and who may choose to opt-in to this case.

66.     Plaintiff's FLSA claims should proceed as a collective action on behalf of all similarly situated individuals who worked as delivery drivers for Defendants during the past three years.

67.     All potential opt-in Plaintiffs worked pursuant to the common misclassification scheme described above under which Defendants did not pay drivers at least the minimum wage for all hours worked, and therefore they are "similarly situated" as that term is defined in 29 U.S.C. § 216(b).

## Legal Claims

### Count I – Violation of the Virginia Misclassification Statute

68.     Plaintiff restates the above paragraphs as if fully set forth herein at length.

69.     Defendants are employers within the meaning of the Virginia Misclassification Statute, § 40.1-28.7:7.

70.     Plaintiff and Class members are employees within the meaning of Virginia Misclassification Statute, § 40.1-28.7:7, since they performed work In Virginia for Virginia

employers.

71.     Defendants have misclassified Plaintiff and other delivery drivers as independent contractors, and have withheld and diverted from the Plaintiff's and Class members' wages amounts for truck payments, insurance coverage, an escrow fund, fuel, maintenance and other expenses in violation of § 40.1-28.7:7.

72.     Pursuant to § 40.1-28.7:7, Plaintiff is entitled to recover, on behalf of himself and other similarly situated, any wages, salary, employment benefits, including expenses incurred by them that would otherwise have been covered by insurance, any other compensation lost, and reasonable attorneys' fees and costs.

### Count II – Violation of Virginia Wage Payment Act

73.     Plaintiff restates the above allegations as if fully set forth herein at length.

74.     VA Code § 40.1-29 provides that "[n]o employer shall withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without the written and signed authorization of the employee." The Code further provides that "[n]o employer shall require any employee, except executive personnel, to sign any contract or agreement which provides for the forfeiture of the employee's wages for time worked as a condition of employment[.]"

75.     Defendants took deductions from Plaintiff's and other drivers' compensation for items including truck payments, insurance coverage, fines and penalties, and an escrow fund. These deductions violate VA Code § 40.1-29. While some of the deductions were set out in Plaintiffs' and other drivers' agreements, they constitute an unlawful "forfeiture of …wages…as a condition of employment." Other deductions were not enumerated in Plaintiff's and other drivers' agreements, and thus were not authorized in writing by Plaintiff and other drivers.

11

76.    Plaintiff and other delivery drivers are entitled to recover the amounts of these deductions; liquidated damages; prejudgment interest; and attorneys' fees and costs.

### Count III – Violation of Virginia Minimum Wage Law

77.    Plaintiff restates the above allegations as if fully set forth herein at length.

78.    VA Code § 40.1-28.10 required every employer, between January 2023 and January 2025, to pay an employee a minimum wage of no less than $12 an hour.

79.    Defendants violated § 40.1-28.10 by failing to ensure that Plaintiff and other drivers minimum wage for all hours worked, after accounting for deductions and expenses they paid that were necessary to perform their job. There were weeks in which, despite working up to 70 hours, after deductions, Plaintiff received very little compensation, or no compensation at all, as set out above.

80.    Plaintiff is entitled to recover, on behalf of himself and other drivers, unpaid minimum wages, plus statutory interest, attorneys' fees, and costs.

### Count IV – Fair Labor Standards Act

81.    Plaintiff restates the above allegations as if fully set forth herein at length.

82.    After accounting for the deductions taken by Defendants from their pay, Defendants failed to pay Plaintiff and the members of the putative collective an hourly rate of at least the federal minimum wage in all workweeks as required by the FLSA, 29 U.S.C. § 206(a).

83.    Defendants' conduct in failing to ensure that their delivery drivers, whom they have relied upon to perform a critical and integral component of their business services, receive the federal minimum wage, after accounting for deductions and expenses they paid that were necessary to perform their job, was knowing, willful, intentional, and done in bad faith.

84.    This claim is brought on behalf of a group of similarly situated individuals who

may choose to "opt in" to this case, pursuant to 29 U.S.C. §216(b).

## Count V – Truth-in-Leasing Claims

85.     Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

86.     Defendants are motor carriers with operating authority granted to them by the DOT.

87.     Under the Truth-in-Leasing regulations, an authorized carrier may perform authorized transportation using leased equipment only if the written lease granting the use of the equipment meets the requirements of 49 C.F.R. § 376.12.

88.     As alleged, Defendants have violated the TIL regulations by, inter alia, taking unspecified and excessive deductions from drivers' earnings; improperly maintaining drivers' escrow funds; making unlawful deductions from escrow funds; and by failing to include the contents, disclosures, and terms required by the TIL regulations in the drivers' lease agreements.

89.     As a result of their failure to comply with the TIL regulations, Plaintiff and the putative class members are entitled to declaratory judgment that the Equipment Lease Agreements violate 49 C.F.R. § 376.12.

90.     As a result of their failure to comply with the TIL regulations, Plaintiff and the putative class members are entitled to enjoin Defendants from attempting to enforce the Equipment Lease Agreements.

91.     As a direct and proximate result of Defendants' substantial and material failure to adhere to the TIL regulations, Defendants have violated the rights of Plaintiff and the putative class members and has caused Plaintiff and the putative class members economic damages in an amount to be determined at trial.

92.     Plaintiff brings this claim pursuant to 49 U.S.C. § 14704(a)(2)

**Prayer for Relief**

WHEREFORE, Plaintiff, individually and on behalf of all drivers similarly situated, respectfully requests that the Court order the following:

A.    Certification of the described Classes with the named Plaintiff as the Class representative;

B.    Certification of the described collective under the FLSA;

C.    Judgment in Plaintiff's favor and against the Defendants awarding compensatory, exemplary, statutory, liquidated and punitive damages;

B.    An Order requiring Defendants to pay all damages, including reimbursement for all wages unlawfully withheld, and any applicable penalties under the FLSA and the TIL regulations;

C.    An Order requiring Defendants to provide each of the drivers an accounting of all transactions with Defendants and to provide all documentation necessary to confirm the validity of the computations;

D.    A judgment against Defendants for all damages that the drivers incurred as a result of its violations of the Truth-in-Leasing regulations, including, but not limited to, restitution for all improper or excessive deductions, chargebacks, or withholdings; all amounts owed in interest on escrow funds, all escrow funds improperly withheld at termination; and other direct and proximate damages;

E.    Attorneys' fees and costs; and

F.    All other relief to which Plaintiff and the Class and Collective may be entitled.

DATED: February 12, 2025

Respectfully submitted,

TRAVIS LIGHT, individually and on behalf of all others similarly situated,

By his attorneys,

/s/
Jacob M. Small (VSB # 84460)
Attorney for Travis Light
J. Madison PLC
1750 Tysons Boulevard
Suite 1500
McLean, Virginia 22102
p (703) 910-5062
f (703) 910-5107
jmsmall@jmadisonplc.com

Harold L. Lichten
(*pro hac vice anticipated*)
Olena Savytska
(*pro hac vice anticipated*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St. Suite 2000
Boston, MA 02116
(617) 994 5800
hlichten@llrlaw.com
osavytska@llrlaw.com